IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 16-cv-02219-MSK

JAMIE L. NEWLON,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

## OPINION and ORDER

**THIS MATTER** comes before the Court on Plaintiff Jamie L. Newlon's appeal of the Commissioner of Social Security's (the "Commissioner") final decision denying her application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, and Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83c. Having considered the pleadings and the record, the Court

**FINDS** and **CONCLUDES**

I.     **Jurisdiction**

Ms. Newlon filed a claim for disability insurance benefits pursuant to Titles II and XVI in October 2012, asserting that her disability began in July 2012. She later amended her claim to include an October 2013 alleged disability onset. After her claim was initially denied, Ms. Stofer filed a written request for a hearing before an Administrative Law Judge (the "ALJ"). This request was granted and a hearing was initially held in July 2014. That hearing was continued and resumed to completion in November 2014.

1

The ALJ issued her decision (the "Decision") on February 27, 2015. The ALJ first found that Ms. Newlon met the insured status requirements through September 30, 2017. Applying the five-step social security disability claim evaluation process, the ALJ next found that: (1) Ms. Newlon had not engaged in substantial gainful activity since October 1, 2013; (2) she had the severe impairments of degenerative joint disease in the left foot, status-post remote Lisfranc's injury, mild intermittent asthma, morbid obesity, moderate conductive hearing loss, borderline intellectual functioning, bipolar I disorder, panic disorder with agoraphobia, social phobia, and generalized anxiety disorder; (3) she did not have an impairment or combination of impairments that met or medically equaled any of the impairments listed in 20 C.F.R. Part 404, Subpt. P, App'x 1; and (4) Ms. Newlon had the residual functional capacity ("RFC") to perform a range of light exertional work as set forth in 20 C.F.R. §§ 404.1567 and 416.967[1] with the additional limitations that she cannot drive and she should not work in a team environment. Given that RFC determination, the Decision found at the "Step 4" stage of the analysis that Ms. Stofer could perform a number of jobs that she had previously performed, including assembler, cleaner and merchandise marker. Based on this conclusion, the ALJ determined that Ms. Newlon was not and had not been under a disability and denied her claim.

The Appeals Council denied Ms. Newlon's request for review of the Decision. Consequently, the Decision is the Commissioner's final decision for purposes of judicial review. *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). Ms. Newlon's appeal was timely

---

[1] All references to the Code of Federal Regulations (C.F.R.) are to the 2015 edition, which was the version in effect at the time of the ALJ's decision. Hereafter, the Court will only cite the pertinent Title II regulations governing disability insurance benefits, found at 20 C.F.R. Part 404. The corresponding regulations governing supplemental security income under Title XVI, which are substantively the same, are found at 20 C.F.R. Part 416.

brought, and this Court exercises jurisdiction to review the Commissioner of Social Security's final decision pursuant to 42 U.S.C. § 405(g).

## II. Issue Presented

Ms. Newlon raises a single principal objection to the ALJ's Decision. She contends that the ALJ erred when she found that Ms. Newlon failed to meet the "intellectual disability" listing set forth in 20 C.F.R. Ch. III, Part 404, Subpart P, App'x 1, § 12.05C, and therefore she is disabled.

## III. Material Facts

The relevant and material facts are as follows. Because the sole issue being appealed by Ms. Newlon is the narrow one, the Court focuses on those facts that are relevant to it. Additional relevant facts are set forth in the legal discussion below as are necessary.

Ms. Newlon was born in 1982. She has an eleventh grade education, and despite multiple efforts, never earned a GED. The evidence in the record pertinent to participation in special education is a school health record from an Aurora public school that indicates that she was in special education. Ms. Newlon's hearing testimony also was that she was in special education while in school. The only academic transcript in the record is from Ms. Newlon's freshman year; it reflects a 0.93 grade point average. At the hearing Ms. Newlon testified that she reads at a third-grade level and has difficulty with simple math. She can perform simple addition but not subtraction, and she cannot make change without electronic assistance.

In June 2010, in connection with a prior social security disability claim, Ms. Newlon was evaluated by a state agency disability determination service as having a Full Scale IQ of 68, which is in the borderline intellectual functioning range. The psychologist performing the

3

evaluation specifically noted that she believed that Ms. Newlon gave good effort on the evaluation and that the score was valid.

Ms. Newlon worked more than thirty jobs from 1997 through 2012. Most were low-level food service and preparation jobs, temporary staffing agency jobs, and house or apartment cleaning jobs. Few if any of them appear to have lasted more than several weeks to a few months. Her earnings at virtually all of them were sparse at best.[2] Ms. Newlon testified that she had significant trouble at many of her jobs because she worked very slowly and could not perform tasks as quickly as her co-workers; she also indicated that she could not handle criticism well and frequently would need to take extended breaks to gather herself if she was criticized or reprimanded.

Ms. Newlon also worked for several nursing facilities over the 1997 to 2012 time period; there is some dispute as to what she did at each of them, but it appears uncontroverted that she received training and worked as a certified nurse assistant (a "CNA") at one facility, though only on a very limited and/or short term basis at that facility. Indeed, the sole nursing home job where she was identified as a CNA on her disability benefits application only generated about $220 in income.

In addition to her potential intellectual disability (borderline intellectual functioning), Ms. Newlon suffers from a number of other health ailments or disorders. As noted above, these consist of degenerative joint disease in the left foot, mild intermittent asthma, morbid obesity,

---

[2] From the 1997 through 2012 period, her total annual income in 2003 was $10,149.97, and her total annual income in 2012 was $14,012.68; other than those two years, she never made more than $8,409.63 in any given year in that fifteen-year time span. At least as of the time of the ALJ's decision, Ms. Newlon's last quarter of documented substantial gainful activity ended in October 2013.

moderate conductive hearing loss, bipolar I disorder, panic disorder with agoraphobia, social phobia, and generalized anxiety disorder.

The only issue relevant to this appeal is whether Ms. Newlon meets the Step 3 criteria for the "intellectual disability" listing set forth in the relevant social security regulations and supporting materials. If she does, she automatically will be disabled for the purposes of the social security analysis.

In this regard, the Decision concluded at the Step 3 stage that Ms. Newlon did not demonstrate sufficient limitations or deficits adaptive functioning as required by the intellectual disability listing. It acknowledged her IQ and academic deficiencies but she concluded that other evidence in the record demonstrated that her adaptive functioning was not limited enough to meet the listing requirement. Having thus rejected Ms. Newlon's claim that she met the Step 3 intellectual disability listing, the Decision concluded in its Step 4 analysis that she had sufficient residual functioning capacity ("RFC") to perform a range of light work and even lower level semi-skilled work. In reaching this finding, it heavily weighted the opinion Dr. Wharry, a state consulting expert, who opined that Ms. Newlon could perform simple work with limited interpersonal contact, but who also found that she demonstrated moderate limitations in (i) maintaining social function and (ii) concentration, persistence or pace resulting in failure to complete tasks in a timely manner; and (iii) mild restrictions in performing activities of daily living.

### IV. Standard of Review

On appeal, a reviewing court's judicial review of the Commissioner of Social Security's determination that claimant is not disabled within the meaning of the Social Security Act is limited. *Hamilton v. Sec'y of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir.

1992). This review is limited to determining whether the Commissioner applied the correct legal standard and whether the Commissioner's decision is supported by substantial evidence. *Id.*; *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990); *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). It requires more than a scintilla of evidence but less than a preponderance of the evidence. *Lax*, 489 F.3d at 1084; *Hedstrom v. Sullivan*, 783 F. Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

**V.     Discussion**

Ms. Newlon's sole argument on appeal is that the ALJ erred because she did not point to substantial evidence that Ms. Newlon failed to meet the Step 3 intellectual disability listing requirements, and thus is automatically disabled under the applicable social security regulations. The Commissioner says that substantial evidence does support that determination on this issue.

The intellectual disability listing is found at 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1, § 12.05. It provides in relevant part:

> Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied...…

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

To satisfy the § 12.05C listing, a social security claimant must prove that: (1) he or she has a reduced mental capacity with deficits in adaptive functioning that initially manifested before age 22; (2) an IQ of 60 to 70; and (3) a physical or mental impairment which poses a significant limitation. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C; *Lax v. Astrue*, 489 F.3d 1080, 1085 (10th Cir. 2007).

In this case, the ALJ did not make specific findings relevant to 12.05 at Step 3 in the Decision, but such error is harmless and not reversible if such findings are explicated at Step 4. *Fischer–Ross v. Barnhart*, 431 F.3d 729, 734-35 (10th Cir.2005). Here, at Step 4, the ALJ found that Ms. Newlon had an IQ of 68 and that Ms. Newlon suffered from a number of other serious physical and mental impairments. These findings satisfy two of the three §12.05 criteria. However, the ALJ found that Ms. Newlon did not satisfy the third §12.05 criterion – that she had significantly subaverage general intellectual functioning with deficits in adaptive functioning that initially manifested during the developmental period (before age 22).

The Decision acknowledged that Ms. Newlon had academic deficiencies (very low grades, placement in a special education program, and inability to earn a GED despite multiple attempts). But it found that despite this, Ms. Newlon did not have current adaptive limitations. The Court agrees with Ms. Newlon that this finding is not supported by substantial evidence.

"Adaptive functioning... refers to how effectively an individual copes with common life demands and how well [he or she] meet[s] the standards of personal independence of someone with similar characteristics." *Haddock v. Astrue*, No. 09-cv-01922-LTB, 2010 WL 2197403, at *4 (D. Colo. May 28, 2010) (citation omitted); *accord Laflan v. Berryhill*, No. 16-cv-02977-MEH, 2017 WL 3048695, at *7 (D. Colo. July 19, 2017). However, the relevant social security

7

regulations do not specify any particular definition or standard that must be used to determine whether a claimant has sufficient limitations or deficits in adaptive functions to meet the § 12.05C intellectual disability listing requirements. Nor is there any single industry standard. To the contrary, the Social Security Administration (the "SSA") has observed that at least four mainstream professional organizations have differing definitions of "deficits in adaptive functioning." *Technical Revisions to Medical Criteria for Determinations of Disability*, 67 Fed. Reg. 20,018, 20,022 (Apr. 24, 2002); *see also Barnes v. Barnhart*, 116 Fed. App'x 934, 942 (10th Cir. 2004). Because there are different definitions, an administrative law judge is free to select the definition or standard best suited to the case, *but he or she must actually select and apply a specific definition or standard*. The failure to do so requires remand and/or reversal. *Barnes*, 116 Fed. App'x at 942-43; *Rodriguez v. Astrue*, No. 07-cv-906-LTB, 2008 WL 1957742 at *5-6 (D. Colo. May 2, 2008).

Here, the ALJ failed to identify and apply any established definition or standard for adaptive functioning. As an initial observation, this likely is clear legal error. *Barnes*, 116 Fed. App'x at 942-43; *Rodriguez*, 2008 WL 1957742, at *5-6. That omission can be harmless, however, if it is apparent from the decision that the administrative law judge actually selected and applied a recognized definition or standard despite the failure to specify that he or she is doing so. *See, e.g., Fetterolf v. Colvin*, No. 2:14-CV-2172-JTM, 2015 WL 4275763, at *9 (D. Kan. July 14, 2015).

More importantly (and as argued by Ms. Newlon in her brief), the ALJ's Decision is fatally flawed because regardless of the definition or standard of "adaptive functioning" that she used, her conclusion is not supported by substantial evidence. Specifically, the only two facts upon which the ALJ relied in determining that she has adequate adaptive functioning – Ms.

8

Newlon's work history and her understanding of the word "comprehend" – do not have any apparent correlation to any possible accepted definition or standard. Instead, they appear to have been employed in a purely *ad hoc* fashion.

It makes intuitive sense that if a claimant previously worked at jobs that required a reasonably high degree of adaptive functioning, the claimant may not have significant limitations or deficits in that area. In fact, courts frequently cite a claimant's established work history as evidence that he or she does not have sufficiently severe adaptive functioning limitations or deficits. *See, e.g., Bland v. Astrue*, 432 Fed. App'x 719, 723 (10th Cir. 2011); *Crane v. Astrue*, 369 Fed. App'x 915, 921 (10th Cir. 2010). However, such courts are clear that a claimant's prior work history is not dispositive, and prior unskilled or semi-skilled work will not automatically preclude a finding that a claimant has sufficient limitation or deficit in his or her adaptive functioning to satisfy the § 12.05C listing requirements. *See Barnes*, 116 Fed. App'x at 941-42; *Munzert v. Astrue*, 502 F. Supp. 2d 1148, 1158 (D. Kan. 2007); *Perez v. Colvin*, 2015 WL 8478441, at *7. The significance of the claimant's prior work is directly linked to the nature of the work performed. *See, e.g., Munzert*, 502 F. Supp. 2d at 1158; *see also Deboer v. Colvin*, No. 15-C-194, 2015 WL 6872344, at *9-10 (E.D. Wis. Nov. 9, 2015). If the claimant's work history suggests that he or she has not been able to successfully hold a job for a reasonable period of time despite multiple attempts to do so, courts often view that as a sign that the claimant lacks sufficient adaptive functioning. *See Barnes*, 116 Fed. App'x at 941-42.

In her Decision, there is no indication that the ALJ considered the nature of the work that Ms. Newlon performed, nor for how long. The Decision's broad conclusion that Ms. Newlon had an extensive work history from 1997 until 2012 or 2013 overstates both the nature and extent of her employment. The record reflects that Ms. Newlon actually held multiple of unskilled, low

9

paying jobs for periods of only a few weeks or months for each job. Her modest wages exceeded $8,500 only in in two years (2003 and 2012), and even then did not exceed $14,012. The ALJ does not explain how this work history of brief and low-paying jobs evidences adaptive functioning.

The Decision also states that Ms. Newlon worked as a CNA from 2002 to 2004, which it characterizes as work performed at a semi-skilled level. Again, the record tells a different story. The only concrete evidence that Ms. Newlon worked *as a CNA* is limited to a single nursing home, "The Oaks of Carrollton." She worked there in 2006 and earned approximately $200. Ms. Newlon apparently *did* receive certification as a CNA, and she lists a number of nursing facilities as employers in her social security disability benefits application (out of more than thirty former employers from 1997 to 2012). But there is no evidence that she actually worked *as a CNA* at these other facilities. Instead, Ms. Newlon's unrebutted testimony is that she worked as a housekeeper or food preparer or server at the other facilities.

Furthermore, with respect to the non-CNA and non-nursing-home jobs, the Decision does not explain *why* Ms. Newlon's employment in non-skilled positions is evidence of sufficient adaptive functioning. The Decision does not identify the duties and tasks that Ms. Newlon performed, or discuss how these duties demonstrate that her adaptive functioning was sufficient to disqualify her from the § 12.05C intellectual disability listing. This is not enough to constitute substantial evidence to support the Decision's Step 3 finding.

The Decision's second basis for finding that Ms. Newlon had sufficient adaptive functioning was her understanding of the meaning of the word "comprehend," which the ALJ characterized as a complex word. Again, the Decision fails to explain how understanding the meaning of this word fits into an established definition or standard for adaptive functioning.

10

Generally, an administrative law judge's personal observations of a claimant at the disability hearing is pertinent only to assess the claimant's credibility, not to make a substantive determination on the merits. *See, e.g., Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000); *Teter v. Heckler*, 775 F.2d 1104, 1106 (10th Cir. 1985). Indeed, an administrative law judge is not free to reject relevant evidence "based on personal observations of the claimant and speculative inferences drawn from the record." *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000); *see also Markle v. Barnhart*, 324 F.3d 182, 187 (3d Cir. 2003); *Perez v. Colvin*, No. 14-cv-02436-RM, 2015 WL 8478441, at *6 (D. Colo. Dec. 9, 2015). It is unclear on what basis the ALJ determined that the word "comprehend" was a complex word, and moreover, what impact Ms. Newlon's understanding of its meaning had. In the absence of an adequate explanation for why the ALJ relied so heavily on Ms. Newlon's use of the single word, the Court cannot assess the significance of the ALJ's observation or whether it correlated at all with standards for adaptive functioning.

For the forgoing reasons, the Commissioner of Social Security's decision is **REVERSED** and **REMANDED.** The Clerk shall enter a Judgment in accordance herewith.

DATED this 25th day of October, 2017.

                                                          **BY THE COURT:**

                                                          Marcia S. Krieger
                                                          United States District Judge